**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
**Appellant**

**v.**

**Eugene R. ALLEN; Elizabeth Ann Allen; T.A., Individually; B.A., H.A.; Minors by their Guardian, Merle S. Kramer; and Debbie Allen, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1997.

Filed March 5, 1998.

Reargument Denied May 11, 1998.

Louis C. Long, Pittsburgh, for appellant.

Dennis J. Mulvihill, Pittsburgh, for T.A., B.A., H.A. and Merle S. Kramer, appellees.

Before JOHNSON, EAKIN and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting in part and denying in part appellant's motion for summary judgment in a declaratory judgment action which sought to determine an insurer's obligations to defend and indemnify in a tort case arising out of the sexual abuse of three minor children. We are called upon to determine whether appellant has a duty, under the homeowner's policy issued to the insureds, to defend an insured in a civil action based upon allegations that he sexually molested children; whether an insurer has a similar duty to defend an insured who is alleged to have allowed the abuse to happen or failed to take steps to prevent it; and, if coverage exists, whether the ongoing sexual molestation of children, or the failure to prevent it, represents a single occurrence or multiple occurrences under the policy. We affirm in part and reverse in part.

In November, 1989, T.A., B.A. and H.A., by their mother and natural guardian, Debbie Allen, filed a suit against Eugene Allen and Elizabeth Allen, his wife, alleging that between 1986 and July, 1988, Eugene Allen sexually molested them in various ways including: posing the children in sexually explicit positions, photographing the children in sexually explicit positions, filming the children in sexually explicit positions, fondling the children and engaging in sexual activity with them. The complaint alleged actions in battery and intentional and negligent infliction of emotional distress against Eugene Allen, and negligence against Elizabeth Allen in failing to prevent the abuse and in allow-

ing the children to be in Eugene Allen's company when she knew or should have known that he was likely to molest them. The Allens tendered the complaint against them to their insurer, General Accident Insurance Company of America, the appellant herein.

Upon receipt of the complaint appellant provided the Allens a defense under a reservation of rights letter. The reservation of rights letter set forth appellant's interpretation of its duty in light of the policies issued to the Allens and the complaint filed against them. The letter also indicated that appellant would be filing a declaratory judgment action to determine its obligation to defend in the underlying action. Appellant then filed a declaratory judgment action in common pleas court which proceeded during the pendency of the civil action against the Allens.

Prior to the filing of the civil complaint Eugene Allen had been found guilty in criminal court of various sexual offenses committed against the three children. Consequently, in the civil action the court directed a verdict against Eugene Allen on the battery and intentional infliction of emotional distress counts while the remaining counts went to the jury. The jury, by interrogatory, found Eugene Allen, Elizabeth Allen and Debbie Allen all negligent, which negligence proximately caused the children's injuries. Meanwhile in the declaratory judgment action both sides filed motions for summary judgment. The court granted appellant's motion for summary judgment as to the intentional acts of Eugene Allen and as to the imposition of punitive damages against him but denied it as it related to negligent acts of Allen and his wife Elizabeth. The court also concluded that appellant's duty to defend arises under all three policies it issued to the Allens as it concluded that the acts constituted multiple occurrences under the policy. The present appeal followed.[1]

Of importance to our decision here is an examination of the allegations of the complaint filed against the Allens as it is well settled by now that an insurer's obligation to defend is based upon the allegations set forth in the underlying complaint. *Aetna Casualty & Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994). Essentially all of the misconduct alleged against Eugene Allen, whether contained in a battery count, an intentional infliction of emotional distress count or a negligent infliction of emotional distress count, is based on the same conduct. A list of that conduct follows: posing the child in sexually explicit positions, photographing the minor in sexually explicit positions, filming the minor in sexually explicit positions, fondling the minor and engaging in sexual activity with the minor. The above allegations were set forth with respect to each of the three Allen children.

In our opinion the duty to defend Eugene Allen, under the facts presented here, is controlled by the decisions in *Aetna Casualty & Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994), and *Erie Insurance Exchange v. Claypoole*, 449 Pa.Super. 142, 673 A.2d 348 (1996). These two cases establish that the injury to a child in sexual abuse cases is deemed to be intentional as a matter of law regardless of whether they are characterized in a complaint as resulting from intentional or negligent acts. All of Eugene Allen's conduct alleged in appellees' complaint is of an intentional nature. Thus, although the conduct could be characterized as negligent to the extent it was imprudent and did not consider the effect to the children, it could not, in any way, be thought of as accidental or merely the result of poor judgment, which is the essential nature of negligent conduct. Under *Roe* and *Claypoole* the conduct alleged is deemed intentional and, consequently, falls within the exclusion of personal liability coverage in the policy for bodily injury "which is expected or intended by the insured."[2]

---

1. This is our second consideration of the present appeal. In our first action with this case appellees argued successfully that the appeal was interlocutory and we quashed the appeal as premature. That decision was appealed by appellant to our Supreme Court which reversed and remanded the case back to us for disposition on the

merits. *General Accident Insurance Company of America v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997).

2. The exact language of this exclusion is set forth in greater detail in the discussion of coverage of Elizabeth Ann Allen, *infra*.

In contrast to the theories of recovery against Eugene Allen, the actions against appellee, Elizabeth Ann Allen, the wife of Eugene Allen, sound completely in negligence. Generally speaking, the complaint alleges that Elizabeth Allen owed a duty to the minor children to protect them from harm and that she was "careless, reckless and negligent" in failing to warn the children of the danger presented them from her husband, in failing to prevent Eugene Allen from taking the minors to the East Fairfield Township property, where much of the abuse took place, in failing to notify authorities of Eugene Allen's conduct and in allowing the minor children to be alone in Eugene Allen's company. In support of these allegations it was further alleged that Elizabeth Allen knew, or should have known, that Eugene Allen was sexually abusing, or was likely to sexually abuse, the Allen children. Although, unlike the allegations against Eugene Allen the allegations against Elizabeth Allen are based upon negligent acts or omissions, appellant argues they are nonetheless excluded from coverage because they relate to the intentional acts of Eugene Allen and, as such, are not "occurrences" under the policy.

Appellant argues that the insurance policies in question are what are commonly termed "occurrence based policies" in the insurance industry. That is, the duty to defend and indemnify is triggered by, and limited to, a covered "occurrence." In its argument that it has no duty to defend or indemnify Elizabeth Allen appellant cites to *Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 639 A.2d 1208 (1994), and *Gene's Restaurant, Inc. v. Nationwide Insurance Co.*, 519 Pa. 306, 548 A.2d 246 (1988), to support its claim that an insurable "occurrence" includes only bodily injury resulting from an "accident." Appellant, relying heavily upon these two decisions, argues that since the bodily injury in this case resulted from intentional acts, and not accidents, the bodily injury was not the result of an insur-

able "occurrence" and no duty is triggered. Appellant is correct that these cases rely upon this particular distinction to find a lack of insurance coverage where the injury sued for was intentionally inflicted by a third party. However, the policy language found here is not the same as was found in the above cited cases and we do not find the same exclusion presented in the policies issued here.

Under the policy issued to the Allens, in the section setting forth "Personal Liability" coverage, the policy states:

if a claim is made or a suit brought against any insured for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

a. pay up to our limit of liability for the damages for which the **insured** is legally liable: and

b. provide a defense at our expense by counsel of our choice. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

In the very next section, under the heading "Exclusions," the policy states:

"Coverage E—Personal Liability do[es] not apply to **bodily injury**[3] or **property damage**:

a. which is expected or intended by the **insured**;"[4]

(Bold lettering in original.)

Of course, the above exclusion is that which appellant has rightfully relied upon in denying coverage to Eugene Allen. Nevertheless, upon its face, neither this exclusion, nor any of the others that follow, indicates that the bodily injury sued for must be "accidental." Unlike the policies examined in both *Gene's Restaurant* and *Britamco v. Grzeskiewicz* the policy here, in its liability coverage and exclusions sections, does not directly tie its liability coverage to each "occurrence."[5] More importantly, we believe,

3. "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."

4. Although several more "exclusions" follow, none appear to relate to the facts of this case.

5. For instance, the policy in *Gene's Restaurant* provided comprehensive general liability cover-

nowhere does appellant's policy define "occurrence".[6] Logic suggests that that which is not expressly excluded in the "Exclusions" section of the policy is, by implication, included.

Appellant further argues that even if coverage is not excluded under its "occurrence" argument, the exclusion relating to intentional injury would preclude coverage as Eugene Allen intended the injury which occurred and he was an insured under the policy. Upon study and reflection of the relevant policy language we disagree.

Under the policy presented to us the only relevant exclusion is the one regarding bodily injury expected or intended by **the insured**. Since the allegations of the complaint, vis-à-vis Elizabeth Allen, do not necessarily involve bodily injury to the plaintiffs which **she** expected or intended, this exclusion should not apply to coverage of her liability. This point was made in *Maravich v. Aetna Life and Casualty Company,* 350 Pa.Super. 392, 504 A.2d 896 (1985) and *McAllister v. Millville Mut. Ins. Co.,* 433 Pa.Super. 330, 640 A.2d 1283 (1994).

Whether the intentional acts of a co-insured will defeat an "innocent" co-insured's ability to collect or be indemnified under a policy has, for the most part, turned upon the exclusionary language used in the policy. Virtually all casualty and indemnity insurance policies issued exclude coverage for damages or liability for damages or injury which was intended by the insured or insureds. However, not all policies contain language that unambiguously excludes coverage for all such damage or liability regardless of whether the insured seeking coverage is the same insured who intended the damage or injury. The policies which contain such language have been enforced accordingly and coverage has been excluded for the "innocent" co-insured despite the fact that that party did not intend the damage or injury that resulted.

Examples of exclusionary policy language producing this result include bodily injury which was expected or intended by "any insured" and "anyone we protect." Less clear is the usage of "an insured," although generally this phrase has been construed to equate to "any insured." On the other hand, the cases here, and elsewhere, dealing with the usage of the term "the insured" have held that for coverage to be excluded under the "intentional act" or "intended or expected" exclusion the damage or injury had to be intended by the insured in question, not another insured under the policy.

Thus, in *Maravich,* coverage was found for an innocent co-insured under policy language excluding coverage for loss resulting from the neglect of **the insured** where her husband had intentionally set their house on fire. We concluded that both husband and wife were "insureds" under the policy and since the exclusion related to the neglect of "the insured," as opposed to "any insured," coverage for the wife hinged upon her neglect, not upon the neglect or intent of her husband. In contrast, in *McAllister,* we considered a factual scenario similar to *Maravich* under a policy that excluded coverage for loss resulting from the neglect of "any insured" or the intentional acts of "an insured." We concluded that the "innocent" co-insured could not recover and drew a distinction between the usage of the term "the insured," which indicated separate insurable interests, and "any insured" or "an insured," which indicated joint insurable interests.[7]

These same distinctions seem to hold sway across various jurisdictions in the context of allegations that a party failed to prevent sexual abuse of children. In *Cambridge Mutual Fire Ins. v. Perry,* 692 A.2d 1388 (Maine

---

age for bodily injury for "each occurrence" and stated that "occurrence means an accident,... ". Britamco's policy had identical language to define occurrence in their policy. *See, Britamco v. Grzeskiewicz, supra.*

**6.** This is somewhat surprising in light of the fact that the term "occurrence" is used in other sections of the policy. Appellant indicates in its brief that later versions of this policy did define "occurrence."

**7.** This same distinction was made recently by a panel of this court when called upon to construe policy language which excluded coverage for a loss caused by the negligent or intentional acts of "anyone we protect." *See, Kundahl v. Erie Insurance Group,* 703 A.2d 542 (Pa.Super.1997).

1997), the Supreme Court of Maine found that an insurer had an obligation to defend a woman in a suit alleging that she had negligently failed to prevent her daughter's sexual abuse at the hands of her husband. The policy there, like ours here, had language excluding coverage for "bodily injury which is expected or intended by the insured." The court concluded that the insurer had an obligation to defend because the injury was not expected or intended from the defendant's standpoint.

In contrast, when policies containing language that excludes coverage for bodily injury which is "expected or intended by any insured" are considered coverage has generally been found lacking. Thus, under facts similar to those presented here, the Missouri Court of Appeals denied coverage to a woman whose husband sexually abused her granddaughter and step granddaughter because he was deemed to have intended the injury to the minors and the policy excluded liability coverage for bodily injury which was expected or intended from the standpoint of "any insured." *American Family Mutual Insurance Co. v. Copeland–Williams*, 941 S.W.2d 625 (Mo.App.1997). The same result has been reached with policies using exclusionary language relating to harm expected or intended by "an insured." *Allstate Insurance Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988), and *Johnson v. Allstate Insurance Co.*, 687 A.2d 642 (Maine 1997).[8] These cases have routinely read this language to equate with "any insured."

Given the above discussion we conclude that coverage for Elizabeth Allen is not defeated by the fact that the injury was expected or intended by Eugene Allen. The exclusionary language in the policy is tied to the expectation of "the insured," which as to the suit against Elizabeth Allen, is Elizabeth Allen.[9] Since it was not alleged that Elizabeth Allen intended the injury to the minor chil-

dren the exclusion in the policy does not apply.

■ The next question we must answer is whether the repeated sexual abuse of the plaintiffs, and the repeated alleged negligence of Elizabeth Allen in failing to prevent the abuse, constitutes a single insurable occurrence or multiple occurrences under the policy language. The policy in question had a personal liability limit of $25,000 for each "occurrence." In a "limit of liability" provision the policy states:

> "[a]ll **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence."

Both parties appear to agree that the controlling approach to determining this particular question lies in application of the causation or cause-of-loss approach. Under this interpretive approach an inquiry is directed into whether there was "but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *D'Auria v. Zurich Insurance Co.*, 352 Pa.Super. 231, 237, 507 A.2d 857, 860 (1986). Although were we required to determine this issue as it relates to coverage for Eugene Allen the task might prove quite contentious, we believe the issue is more clear cut with regard to coverage afforded Elizabeth Allen.

The allegations of negligence of Elizabeth Allen were all directed to a failure of Mrs. Allen to prevent the abuse at the hands of her husband. Such failure persisted throughout the period of time the abuse occurred. Thus, at least as it relates to Mrs. Allen, the injury to the plaintiffs resulted from "continuous or repeated exposure to substantially the same general condition," *i.e.*, Mrs. Allen's negligent failure to prevent the sexual abuse, and, as such, was a single occurrence within the meaning of the policy. Although neither party has cited to an appel-

---

8. Note that the Supreme Judicial Court of Maine had no difficulty coming to a contrary conclusion when faced with a policy that utilized "the insured" as opposed to "an insured." *See, Hanover Insurance Co. v. Crocker*, 688 A.2d 928 (Maine.1997) and *Cambridge Mutual Fire Ins., supra.*

9. This point is further buttressed by the "severability of Insurance" clause in the policy which states "[t]his insurance applies separately to each **insured.**"

late decision of a Pennsylvania court interpreting the occurrence issue in the context of a sexual abuse case, several other jurisdictions have and have reached a conclusion similar to ours.

In *State Farm Fire and Casualty v. Elizabeth N.*, 9 Cal.App.4th 1232, 12 Cal.Rptr.2d 327 (1992), the California Court of Appeals considered a case with facts remarkably similar to those presented here. There, the insured's husband, Byron, abused children who were being cared for by the insured, Lynn. An action was filed against both Byron and Lynn with the action against Lynn being for failure to provide adequate care and supervision of the children. The relevant policy language in *Elizabeth N.* was identical to General Accident's policy language quoted above and, like the General Accident policy here, there was no definition of the term "occurrence." In determining the number of "occurrences" that resulted from the various incidents of child abuse as it related to Lynn the court concluded that there was a single occurrence under the policy as to each child. The court stated:

> The stipulated facts establish that Lynn negligently failed to provide adequate care and supervision for the children, which resulted in repeated molestation of the children by Byron. Therefore, the multiple injuries suffered by each child resulted from repeated exposure to substantially the same general conditions. Even if each injury Byron inflicted on a child resulted from a new negligent act by Lynn, each act of negligence by Lynn was substantially the same—a failure to care for and supervise the child adequately.

Of course, the above commentary applies equally well to the facts of the present case. Since Elizabeth Allen was not alleged to have personally abused the children, her only causal contribution to the childrens' "bodily injury" was a result of her failure to prevent the abuse. This failure was ongoing

throughout the period of abuse and, under a fair reading of the terms of the policy, constituted but a single occurrence.[10] This interpretation would appear consistent with the decision in *D'Auria v. Zurich Insurance Co.*, 352 Pa.Super. 231, 237, 507 A.2d 857, 860 (1986).

In *D'Auria*, Gregory Egnot, who experienced renal failure as a young man, sued Thomas D'Auria, a pediatric doctor, for a failure to diagnose the plaintiff's lower urinary tract obstruction when he was a child. It was alleged that the doctor's failure to properly diagnose his condition later resulted in his renal failure as a young man. In determining which of several insurers might be obligated to defend Dr. D'Auria the court found it necessary to determine how many occurrences of negligence were implicated by the plaintiff's complaint. The court stated "we find that Egnot's complaint alleges only one occurrence. The cause of Mr. Egnot's alleged renal failure was the alleged mistreatment of his condition by Dr. D'Auria." *Id.*, 352 Pa.Super. at 237, 507 A.2d at 860.

In rejecting an argument that there were two causes, or multiple occurrences, one for each failure to diagnose the condition, we stated, "to divide the doctor's mistreatment into multiple causes here would be an artificial and arbitrary division. The substance of Egnot's complaint alleges one cause, Dr. D'Auria's mistreatment of his renal condition." *Id.*, 352 Pa.Super. at 238, 507 A.2d at 861. Adhering to the principles enunciated in *D'Auria* and the sexual abuse cases of the sister jurisdictions cited above leads us to conclude that Elizabeth Allen's continuing failure to prevent the child abuse was a single occurrence as to each child under the policy language.

To summarize our conclusions reached above, we conclude that the trial court correctly granted summary judgment in favor of appellant as to a duty to defend Eugene Allen against claims of intentional sexual

10. In accord: *Washoe County v. Transcontinental Insurance Co.*, 110 Nev. 798, 878 P.2d 306 (1994), (in which a county was sued for its "negligent licensing and monitoring" of a day care center in which over forty children were sexually molested. The court held that the county's negligence was a single occurrence under the policy language.); and *Lee v. Interstate Fire & Casualty Company*, 826 F.Supp. 1156 (N.D.Ill.1993), (in which the Diocese of Providence was alleged to have negligently supervised one of its priests which sexually molested a young boy. The court found that the Diocese's negligent supervision was a single occurrence despite the fact that there were numerous instances of abuse.)

abuse. However, we conclude that the court erred in denying appellant's summary judgment motion as it related to any duty to defend Eugene Allen, in any respect, resulting from the allegations of sexual abuse, whether couched as negligently or intentionally inflicted. As a matter of law, the children's action alleging sexual abuse implicates conduct that resulted in bodily injury which was "expected or intended" by Allen and, as such, is excluded under the policy.

We affirm the granting of summary judgment in appellees' favor as it relates to appellant's duty to defend Elizabeth Allen. The allegations against Elizabeth Allen did not implicate bodily injury that was expected or intended by her. This being the case, the intentional injury exclusion does not apply to her, nor does any other exclusion apply to the allegations against her.

We reverse the order of court to the extent it concludes that Elizabeth Allen's negligence constituted more than one occurrence as to each child. A fair reading of the policy language in conjunction with caselaw indicates that her failure to prevent the abuse was a continuing negligence which constitutes only one occurrence under the policy language.

Order affirmed in part and reversed in part. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.